UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN PERKINS,

               Plaintiff,           Civil Action No. 23-11530

v.                                   Thomas L. Ludington
                                   United States District Judge

CARY JOHNSON, *et al.*,          David R. Grand
                                   United States Magistrate Judge

               Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 18)

Plaintiff Sean Perkins ("Perkins"), an incarcerated person, brings this civil rights action pursuant to 42 U.S.C. § 1983, against employees of the Michigan Department of Corrections ("MDOC"). (ECF No. 1). Specifically, Perkins claims that MDOC employees Cary Johnson, Todd Redman, Kimberly Napier, and Terry Taylor (collectively, "Defendants"), violated his rights under the Eighth Amendment by "blatant[ly] disregard[ing] [] PREA Policy" and failing to protect him from an attack by another prisoner, as well as his rights under the First Amendment by retaliating against him for engaging in protected activity. (ECF No. 1, PageID.5, 16).[1]

---

[1] An Order of Reference was entered on December 07, 2023, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 11).

On February 06, 2024, Defendants filed a Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 18). Perkins filed a response to this motion on April 05, 2024 (ECF No. 20), and Defendants filed a reply on April 19, 2024. (ECF No. 21).

On July 12, 2014, the Court held a hearing on Defendants' motion, and counsel for the parties were instructed to file supplemental briefs addressing the appropriate MDOC grievance procedure for the exhaustion of each of Perkins' claims. Defendants and Perkins have now filed their supplemental briefs. (ECF Nos. 24, 25).

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 18)** be **GRANTED.**

## II.   REPORT

### A.   Background

#### 1. The Complaint

Perkins is a MDOC prisoner who is currently confined at the Parnall Correctional Facility in Jackson, Michigan. He brings this § 1983 civil rights action, alleging violations of his Eighth Amendment and First Amendment rights, as well as state law claims of rape, sexual assault, assault, and intentional infliction of emotional distress while being housed at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan. (ECF No. 1, PageID.1, 16).

Perkins' verified complaint is at times difficult to decipher and unclear as to the specific dates when certain alleged events transpired, but when liberally construed, the crux of Perkins' allegations is that Defendants failed to protect him from an attack by prisoner

2

Barnard Coney ("Coney") by failing to process and act on third-party PREA grievances allegedly filed on Perkins' behalf by another prisoner, Robert Winburn ("R/W"), and that Defendants retaliated against him for engaging in protected activity by allowing Coney to be housed near him.  (ECF No. 1, PageID.8, 16).

Specifically, Perkins alleges that, on an unspecified date, "while housed in C-Unit," Coney "pulled [him] into a bathroom and began violently beating on [him], pulling his hair and hurting [him], while also forcing [him] to perform oral sex on [Coney] afterward." (ECF No. 1, PageID.3-4).  As a result, Perkins "summoned the courage to ask prisoner R/W for help" to file a third-party "PREA complaint" on his behalf.  (*Id.*, PageID.4). Perkins was also apparently placed for a short time in the "L-Unit" or "Temporary Segregation ('Temp-Seg')," during which he explained to an "Unknown Sergeant in L-Unit" "what was happening to him" and "sought placement in Protective Custody."  (*Id.*). However, Perkins alleges that "the very next day," "L-Unit custody officers told [him] he was being returned to general population per conversations with Defendant Officer Johnson."  (*Id.*).  Although Perkins "pleaded with staff indicating that he was in Temp-Seg because he was trying to get away from the situation with Prisoner Coney in C-Unit," the "Temp-Seg Custody Officers" responded that they did not "know about all that, but [he was] going to [be moved back to general population in the] C-Unit."  (*Id.*).  Perkins alleges that Defendants "turn[ed] a blind eye" to his request for Protective Custody, and failed to properly follow the provisions of "MDOC PD 04.05.120 providing specific requirements

for prisoners seeking Protective Custody" and "the Prisoner Rape Elimination Act and PD 03.03.140." (*Id.*, PageID.5).[2]

Perkins alleges that "within a day, or a few days of being ordered released from Temp-Seg," he was "stalked, found, attacked, stabbed, and sexually assaulted by prisoner Coney." (*Id.*, PageID.6). He alleges that he also "received threats for R/W's filing," and that "[h]is PREA through R/W was ineffective and resulted in staff threats." (*Id.*, PageID.6-7). Specifically, Perkins alleges that "[a]fter the first PREA [complaint], [he] was told by Defendant Taylor to stop snitching wherein Officer Taylor provided [him]" with a "Snitch Form." (*Id.*). The form's title reads:



(*Id.*, PageID.19). The alleged "Snitch Form" contains other aspects which suggests it is not used as a serious attempt to elicit important information from inmates. For example, one question asks the inmate, "2. What did they do? It doesn't really matter, just lie . . . you're a *snitch*!" while another asks the inmate "What kind of *snitch* are you?" and then asks him to circle either "Wanna-Be," "Beginner," "Average," "Semi-Pro," "Professional,"

---

[2] While difficult to decipher, Perkins alleges that "Defendant Johnson worked her magic for prisoner Coney and had Plaintiff released back to general population without following protocol on Protective Custody Request, while also circumventing seeing JCF Security Classification Committee. Thus, the grievance process [was] totally unavailable." (ECF No. 1, PageID.5). He also alleges that "as a direct and proximate result of Defendant Johnson's intervention, and Defendant Johnson, Defendant Redman, and Defendant Napier's blatant disregard of PREA Policy, [he] was ordered released from Protective Custody without PREA interview, and to return to C-Unit . . . " (*Id.*).

or "All-Star." (*Id.*) (emphasis in original). Finally, the form asks the prisoner to place a check mark next to one of two requests:

——— I would like to lock-up for protection after turning in this Snitch Form.
——— I would like to feel the sensation of being struck by a lock in a sock.

(*Id.*).

Perkins alleges that, because he was "scared of going up front after receiving threats on his life for cooperating with authorities," he had R/W "initiate a Third-Party PREA Complaint once again on [his] behalf." (*Id.*, PageID.6). He also alleges that, on March 12, 2021, when he was "in his new Housing Unit (B-Unit)," "prisoner Coney found [him] and attacked him." (*Id.*, PageID.7). He alleges that Coney walked "directly past the Officer's Desk which was supposed to be attended to by Defendant Officer Taylor, and [] was supposed to be completely off limits to prisoners from other Units," which amounted to a "reckless disregard for safety." (*Id.*). Perkins alleges that Coney violently attacked and stabbed him with a "homemade knife," and "forcefully pulled at the back side of [his] clothing, exposing his butt, and forced [a] finger inside [his] rectum . . ." (*Id.*). When Perkins went to the Officer Desk for assistance, Defendant Officer Taylor "act[ed] like he saw nothing." (*Id.*, PageID.8). Perkins claims that, "as a direct and proximate result of Defendant Officer Taylor's and Defendant Officer Redman's failure to act on a Third Party PREA complaint given to him by prisoner R/W while at Health Care, prisoner Coney was able to freely walk into B-Unit armed with a knife . . . and then violently attacked and sexually assaulted [him]." (*Id.*).

Perkins alleges that "Defendants, the state and their Agents took active steps to thwart the processing of a PREA complaint initiated by prisoner R/W on [his] behalf," and that PREA Coordinator Kimberly Napier said "R/W could not file a PREA on behalf of another," which is contrary to "PREA Policy 03.03.140(MM)[,] particularly where [Perkins] authorized R/W to commence one on [his] behalf because he did not know how to write it, and did not want Coney to become aware of it while [he] was on the same yard with Coney." (*Id.*, PageID.9) (emphasis in original). Perkins alleges that Defendants' "above described deliberate indifference to [his] serious risk factors" left him "continuously being held as a prey to prisoner Coney immediately before seeking Protection, and afterward[,] resulting in [his] not only being stabbed . . . but also penetrated in his anus by a finger from Coney . . ." (*Id.*). Based on the above, Perkins seeks monetary damages. (*Id.*, PageID.17).

Defendants now move for summary judgement, contending that Perkins did not exhaust available remedies before filing this action. (ECF No. 18, PageID.79-80).

## B.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's

6

evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

C.    **Analysis**

In their motion, Defendants move for summary judgment on all claims on the basis that Perkins failed to properly exhaust his administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all *available* administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The PLRA's "exhaustion" requirement serves two main purposes:

7

it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being hauled into federal court. *Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 200 (2007). Improperly filed grievances do not satisfy the exhaustion requirement. *Id.* at 218. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See id.* at 216; *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

The U.S. Supreme Court determined that under the PLRA, inmates are required to exhaust administrative remedies that are available to them; they are not required to exhaust those that are unavailable to them. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). A prison's internal grievance procedure becomes "unavailable" when prison administrators hinder inmates from utilizing the grievance process "through machination, misrepresentation, or intimidation." *Id.* at 1854.

Here, Defendants argue that Perkins failed to properly exhaust his claims because his "Step III Grievance Report shows that he did not pursue any grievances through Step III before he filed his lawsuit," and JCF Litigation Coordinator Kim Napier attested in an affidavit that "there were no PREA grievances submitted by Perkins or on Perkins' behalf"

arising out of the attack on March 12, 2021.  (ECF No. 18, PageID.71, 79-80).  Perkins responds by arguing that R/W filed two third-party PREA grievances on his behalf, but Defendants' refused to process them, and that he was prevented from exhausting his administrative remedies through "Defendants' misrepresentation, intimidation, and refusal to process his grievances."  (ECF No. 20, PageID.117).  After careful review of the record evidence and the parties' arguments, while Perkins' allegations about Officer Taylor providing him with the Snitch Form are extremely troubling, ultimately the Court finds that Defendants are entitled to summary judgment on the basis of exhaustion.

### *Perkins Fails to Raise a Material Question of Fact as to Whether He Properly Exhausted a Grievance against Defendants*

a. <u>Eighth Amendment Failure to Protect Claims</u>

Defendants first argue that Perkins' failure-to-protect claims must be dismissed as unexhausted because he was required to exhaust such claims through Step III of the MDOC's general grievance process.  (ECF No. 18-3, PageID.95).  In Michigan's correctional facilities, prisoner grievances are generally governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "General Grievance Policy").  (ECF No. 18-2, PageID.85-92).  According to the General Grievance Policy, "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures."  (*Id.* at ¶ F).  Moreover, "[a] grievant shall not be penalized in any way for filing a grievance except as provided in this

policy for misusing the grievance process.  Staff shall avoid any action that gives the appearance of reprisal for using the grievance process."  (*Id.* at ¶ L).

A Michigan state prisoner must first complete the process outlined in the General Grievance Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct.  (*Id.* at ¶ C).  If a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance.  (*Id.* at ¶¶ Q, W).  If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due.  (*Id.* at ¶ DD).  If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III.  (*Id.* at ¶ HH).  The foregoing notwithstanding, the General Grievance Policy provides, "[g]rievances filed regarding sexual abuse, including those filed by a third party, shall not be processed as grievances under this policy but shall be reported in accordance with PD 03.03.140 'Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners.'"  (*Id.* at ¶ D).

In support of their motion, Defendants provide a copy of Perkins' MDOC Step III Grievance Report, which reflects that he did not exhaust any grievances through the three-step general grievance process during the relevant time period.  (ECF No. 18-3, PageID.95).  Perkins does not dispute that he did not file or pursue any grievances through Step III of the General Grievance Policy.  Instead, Perkins broadly argues that "he had two

10

third-party [PREA] grievances submitted by 'R/W' concerning the allegations made in his complaint," and thus "there exists a genuine dispute of material fact as to whether [he] exhausted his available administrative remedies by having two third-party PREA grievances filed on his behalf."  (ECF No. 20, PageID.116-17).  Perkins' argument lacks merit for several reasons.

First, the PREA grievance process was not the proper administrative procedure for Perkins to exhaust his Eighth Amendment failure-to-protect claims.  Rather, the General Grievance Policy makes clear that grievances "regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures," must be pursued through the three-step general grievance process.  (ECF No. 18-2, PageID.85, ¶ F).  The PREA Grievance Policy states the same in a different way, providing that "[a]ny PREA Grievance containing issues *other than sexual abuse* shall be denied and returned to the prisoner with instructions to submit the grievance in accordance with [the General Grievance Policy."  (ECF No. 18-4, PageID.102, ¶ II (emphasis added); *see also id.* at ¶ NN ("Any issues other than sexual abuse addressed in third party grievances shall be denied in accordance with this policy")).

Perkins' claim in this case is not that *Defendants* sexually abused him, which claim he would have needed to exhaust by filing a PREA grievance; instead, his claim is that Defendants failed to protect him from sexual abuse by *prisoner Coney*.  As such, his claim against *Defendants for their alleged failure to protect him* needed to be exhausted under the three-step general grievance process.  *See, e.g.*, *Grover v. Lange*, 2022 WL 485028

(W.D. Mich. Jan. 14, 2022) (finding that prisoner was required to report his Eighth Amendment claim for failure to protect him from an officer's sexual advances "via the MDOC's 'normal' three-step grievance process," and that "such claims were not properly reported via a PREA grievance . . .").

Perkins does not meaningfully dispute this point in his response to Defendants' motion or his supplemental briefing. Indeed, his supplemental briefing fails to address Defendants' argument that an Eighth Amendment failure-to-protect claim is only properly exhausted through the three-step general grievance process. *See also* dkt. entry 07/12/2024 (text entry ordering parties "to file supplemental briefs addressing the appropriate MDOC grievance procedure for the exhaustion of each of plaintiff's claims, ***including any claim that defendants failed to protect him from a known assailant***, and any claim that plaintiff was retaliated against for making a PREA complaint.") (emphasis added).

Second, even assuming the PREA grievance process could serve as a proper vehicle for exhausting an Eighth Amendment failure-to-protect claim, Perkins failed to submit proper evidence to raise a material question of fact on that issue. Courts have found that a prisoner fails to provide sufficient evidence that he exhausted his administrative remedies where he did not produce at least a goldenrod copy of his allegedly filed grievance. *Sango v. Bastian*, 2016 WL 3040772, at *2 (W.D. Mich. Apr. 1, 2016) ("Plaintiff has not attached any of the goldenrod copies to his response brief and has made no attempt to show that he actually tried to grieve the issues involved in this complaint."); *Valdes v. Evans*, No. 20-6095, 2021 WL 7627520, at *3 (6th Cir. Oct. 29, 2021) (prisoner did not show that he exhausted his administrative remedies as a matter of law because he failed to submit

12

records of his alleged grievances into the district court record.); *McSwain v. West,* 2021 WL 6066354, at *7 (E.D. Mich. Sept. 27, 2021) (prisoner did not raise a question of material fact as to whether he properly exhausted administrative remedies because he did not submit any evidence showing that he filed any relevant grievances.); *Thorne v. S. Cent. Corr. Facility,* 2015 WL 1190159 (M.D. Tenn. Mar. 13, 2015) (plaintiff failed to satisfy his burden of showing exhaustion under the PLRA because he "fail[ed] to provide copies of the purported grievance or otherwise support his contention that he filed a grievance with any type of documentation.").  Along with his summary judgment response, Perkins submitted R/W's affidavit attesting that he (R/W) submitted such PREA grievances on Perkins' behalf.  (ECF No. 20, PageID.121).  R/W's affidavit purports to quote from the grievances and asserts that "Golden Rod" copies of the grievances are "attached."  (ECF No. 20, PageID.121 ("See attached Golden Rod copy of Grievance filed as an offer of proof, at Exhibit A," and "See attached Golden-Rod copy of Grievance as an offer of proof, at Exhibit B")).  In reality, however, copies of the grievances were *not* attached to R/W's affidavit.  Given the issue's significance, at the July 12, 2024 hearing on Defendants' motion, the Court expressly inquired about the goldenrod copies and provided Perkins' counsel an opportunity to obtain them and submit them to the Court.  To date, however, the grievances still have not been submitted.  With no evidence of the actual alleged PREA grievances, Perkins failed to raise a material question of fact that he properly exhausted his claims.[3]

---

[3] The Court also notes that paragraph NN of the PREA Policy states, "If a PREA Grievance alleging sexual abuse is filed by a third party on behalf of a prisoner, ***the alleged victim must sign the***

Finally, while Perkins' allegations about being given the "Snitch Form" are concerning, Perkins' argument that his being provided that form rendered the grievance process "unavailable" to him lacks merit.  First, because Perkins alleges that he was given the "Snitch Form" *after* the filing of his first PREA grievance (ECF No. 25, PageID.142-43; *see also* ECF No. 1, PageID.6) ("After the first PREA, Plaintiff was told by Defendant Taylor to stop snitching wherein Officer Taylor provided Plaintiff with a Memo that said the more you tell the more we know . . ."), his receipt of the form would have no bearing on his exhaustion of any claims raised in that first grievance.  Second, the evidence is undisputed that even after receiving the Snitch Form "[a]fter the first PREA," Perkins subsequently had R/W file a *second* third-party PREA complaint on his behalf, and had R/W even send "an exact copy of the first and second grievances to Lansing, *among other complaints*."  (ECF No. 1, PageID.6; ECF No. 20, PageID.122).  In other words, Perkins' contention that the grievance process was rendered "unavailable" to him by his receipt of the alleged Snitch Form is belied by evidence that he continued to file grievances and complaints about the matters at issue, as attested to in his own verified complaint and the affidavit he provided from R/W.  Consequently, while providing Perkins with the alleged Snitch Form would be extremely inappropriate and concerning, Perkins failed to present sufficient evidence to raise a material factual question that the grievance process was "unavailable" to him.  *See, e.g.*, *Sango v. Fleury,* 2022 WL 2163519, at *2 (6th Cir. May

---

**PREA Grievance** authorizing the grievance to be filed on his/her behalf.  **Failure to sign the grievance will result in the grievance being immediately dismissed**."  (ECF No. 18-4, PageID.102, ¶ NN) (emphasis added).  There is no evidence in the record that Perkins actually signed any PREA grievance.

4, 2022) (grievance process was available to a prisoner who, despite the alleged threats and intimidation, "continued to file so many grievances against the same people and for the same reasons."); *Hempstead v. Parker*, No. 3:21-CV-417-TAV-DCP, 2023 WL 4280679, at *6 (E.D. Tenn. June 29, 2023) ("To determine whether intimidation excuses a prisoner's non-exhaustion, several circuit courts [and district courts within the Sixth Circuit] have adopted a two-part test that includes an objective and a subjective component: (1) that the threat of retaliation would have deterred an inmate of ordinary firmness from using the grievance process and (2) that the inmate was actually deterred.") (citing cases); *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (holding that inmate alleging grievance procedure was unavailable due to "threat or intimidation" must show, *inter alia*, "that the threat or intimidation actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the prison administrative process . . .").

Accordingly, for the reasons explained above, Perkins failed to raise a material factual question as to whether he properly exhausted his Eighth Amendment failure-to-protect claims, and summary judgment should be granted for Defendants on such claims.

   b. First Amendment Retaliation Claims

Defendants argue that Perkins' retaliation claims were likewise required to be exhausted through the three-step general grievance process, as the PREA process only addresses "sexual abuse."  Policy Directive 03.03.140, entitled "Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners" (the "PREA Policy"), provides that the MDOC "has a zero tolerance standard for sexual abuse between or among prisoners" and addresses "prisoner-on-prisoner sexual abuse, staff sexual misconduct, and

staff sexual harassment in correctional facilities." (ECF No. 18-4, PageID.97, ¶ 98). As for exhaustion, "[t]he PREA Grievance process is a two-step process allowing prisoners to grieve regarding allegations of *sexual abuse*," and "[i]ssues filed by prisoners regarding *sexual abuse*, as defined by this policy, serve to exhaust the prisoner's administrative remedies only when filed through both steps of the PREA grievance process." (ECF No. 18-4, PageID.101, ¶ EE) (emphasis added). Importantly, the PREA Policy provides that:

> Any PREA Grievance containing *issues other than sexual abuse shall be denied and returned to the prisoner with instructions to submit the grievance in accordance with [the General Grievance Policy,] PD 03.02.130 "Prisoner/Parolee Grievances."* Any PREA grievance containing multiple issues, which include sexual abuse and non-sexual abuse issues, shall be processed in accordance with this policy in order to address the allegations of sexual abuse only. The prisoner shall be notified in the PREA Grievance response that s/he must submit a new grievance in accordance with PD 03.02.130 to address any concerns not related to sexual abuse.

(*Id.*, PageID.102, ¶ II) (emphasis added). Based on the above provisions, Defendants argue that Perkins' *retaliation* claims are "issues other than sexual abuse," and therefore needed to be exhausted via the three-step general grievance process.

In response, Perkins does not dispute that he failed to utilize the three-step general grievance process to exhaust his retaliation claims. Instead, he argues that it was proper to exhaust his retaliation claims via a PREA grievance because the PREA Policy "mentions retaliation twice." (ECF No. 25, PageID.140). He refers to paragraphs V and Y of the PREA Policy, which provide that: (1) "All prisoners and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations are protected from retaliation for reporting the incident or participating in the investigation,"

and (2) "Prisoners may report allegations of conduct prohibited by this policy, including threats of such conduct and retaliation for reporting such conduct, verbally or in writing to any Department employee, through the MDOC Sexual Abuse Hotline, through the PREA grievance process as outlined in this policy, through the Legislative Corrections Ombudsman, or through a third party." (*Id.*, PageID.100-01, ¶¶ V, Y).

Even if Perkins is correct that he could have properly exhausted his retaliation claim by filing a PREA grievance,[4] as explained above, *see supra* at 12-13, he failed to raise a material question of fact that any such PREA grievance was actually filed.[5]  Accordingly,

---

[4] The Court notes that numerous Western District of Michigan cases have held that a prisoner plaintiff's PREA grievance cannot serve to properly exhaust a *retaliation claim. See e.g., Johnson v. Gust*, No. 1:19-CV-682, 2021 WL 1092665, at *9-10 (W.D. Mich. Feb. 26, 2021) ("[E]ven if Johnson *had* exhausted a PREA grievance, she could not use the PREA grievance procedure to exhaust a First Amendment retaliation claim."); *Onumonu v. Michigan Dep't of Corr.*, No. 1:20-CV-816, 2022 WL 1597313, at *1 (W.D. Mich. May 20, 2022) ("Although Plaintiff contends that retaliation for protected conduct was the *motive* for the strip search, that motive is an issue separate and distinct from whether [defendant] actually subjected Plaintiff to sexual abuse/harassment."); *Fortenberry v. Acker*, No. 1:20-CV-1202, 2022 WL 2760062, at *4 (W.D. Mich. June 13, 2022) ("to the extent that Fortenberry contends that he exhausted retaliation claims by filing a PREA . . . this argument fails.  Even if Fortenberry had exhausted a PREA grievance, he could not use the PREA grievance procedure to exhaust a First Amendment retaliation claim.").  Perkins' arguments in his supplemental brief attempting to distinguish these cases from his lack merit.  For example, he argues that "[t]he first, and potentially, most relevant, difference between the *Onumonu* case and [] Perkins' claims is that the *Onumonu* plaintiff received a response to his grievance that expressly stated, "[o]nly allegations of sexual abuse/harassment are being addressed in this PREA investigation," but in Perkins' case, "there is no claim by either Party that [] Perkins received a formal response to his grievance," and so the MDOC "decline[d] to enforce its own procedural requirements with respect to [] Perkins' grievance."  (ECF No. 25, PageID.138).  But again, Perkins did not provide any evidence of a PREA grievance that was actually filed, so the alleged lack of a "formal response" is irrelevant.  Moreover, it is noteworthy that Perkins' argument assumes the MDOC's "procedural requirement" is that any retaliation claim – even when the retaliatory conduct itself constitutes sexual abuse – must be grieved through the three-step general grievance process, not the PREA.

[5] Finally, even assuming the PREA Policy allowed Perkins to exhaust his retaliation claims via the two-step PREA grievance process, and even assuming the two third-party PREA grievances R/W purportedly quotes from in his affidavit (but did not attach) had actually been submitted, they

Perkins failed to raise a material factual question that he exhausted his retaliation claims, and summary judgment should be granted for Defendants.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment on the Basis of Exhaustion **(ECF No. 18)** be **GRANTED**.


Dated: August 13, 2024                          s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge


## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the

---

would not have exhausted Perkins' instant retaliation claims.  The PREA Policy provides that "[i]nformation provided should be limited to facts involving the issues being grieved (i.e., who, what, when, where, why and how)," and "[d]ates, times, places and names of all those involved should be included."  (ECF No. 18-4, PageID.101, ¶ FF).  However, the only reference to retaliation in either purported grievance is the statement in each one, "*I request a STOP ORDER on retaliation for making this complaint* . . ."  (ECF No. 20, PageID.121) (emphasis added).  Such statements fail to provide *any* details as to specific retaliatory acts that are being grieved.  Moreover, since the only reference to retaliation is each purported grievance's "request" for a "STOP ORDER on retaliation for making *this* complaint," each purported grievance appears to be a preemptive attempt to prevent *future* retaliatory acts that may result from the filing the grievance, and not a grievance against any specific past retaliatory act.

objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 13, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager